## RETTIG v INDUSTRIAL COMMISSION

Ohio Appeals, 2nd Dist, Montgomery Co

No 1453. Decided June 23, 1937

Herbert S. Duffy, Attorney General, Columbus, Eugene Carlin, Ass't Attorney General, Columbus, and Nicholas F. Nolan, Prosecuting Attorney, Dayton, for defendant-appellant.

C. W. Elliott, Columbus, for plaintiff-appellee.

## OPINION

By HORNBECK, J.

An appeal on questions of law from a judgment in favor of the plaintiff.

The issue presented is whether or not plaintiff is entitled to participate in The Workmen's Compensation Fund by reason of having suffered an injury while in the course of his employment.

There is little or no dispute in the facts developed. Plaintiff, a man of sixty-eight years of age and in apparent good health, was employed by The Miami Valley Chautauqua Company, which owned and operated a large tract of land between Miamisburg and Franklin, upon which were an auditorium, cottages and such amusement buildings as are ordinarily found in pleasure resorts.

Several months before the occurrences out of which this action arose plaintiff was employed by the superintendent of maintenance of the Chautauqua grounds. His duties as defined by the superintendent were to take care of picnic grounds, lawn, shrubbery, odd jobs and to operate a power lawn mower. The operation of the lawn mower required much of plaintiff's time because of the size of the ground and extent to which it was in grass. The power lawn mower was operated from the seat and much of the work of the plaintiff was in the shade, as the testimony discloses that the grounds were very thick with trees. The only other work than that heretofore mentioned, which it appears that plaintiff did in his routine duties, was odd jobs of carpentry and sprinkling the tennis courts.

On July 24, 1934, under the instruction of the manager of the Chautauqua Company, the plaintiff was put on the job of shoveling gravel, wheeling it through loose gravel in a barrow, loading it on a truck and removing it by the truck. In this work the plaintiff was assisted by another, who alternately with the plaintiff did the heavy work incident to the engagement. On the afternoon of July 25, 1934, the man who had been assisting the plaintiff in doing his work did not return and all of the work to be done fell upon the plaintiff. The gravel was wheeled in a space about nine feet wide by twenty-five feet long, between a new cement walk which had been laid but two days before and a low building with a composition roof. At the south end of the strip was another building, which joined the gravel strip at one end and extended to a rise of ground. The plaintiff was therefore working in an enclosure somewhat depressed, largely surrounded by buildings and a natural elevation which prevented any considerable circulation of air.

Plaintiff suffered a sun stroke between one and two o'clock in the afternoon. He worked in the rays of the sun and the temperature at the time he was prostrated was 108 degrees. It is also testified that the concrete, being green, threw off heat which would increase the temperature in the immediate vicinity thereof as much as 15 degrees. The plaintiff had begun his work at 12:30 o'clock for the afternoon. At about two o'clock he was observed to fall as he was wheeling the barrow, immediately got up, attempted to resume his work but fell again and thereafter became unconscious, was removed to his room, where it was found that he carried a temperature of 109 degrees and remained unconscious for some forty-eight hours. It appears that he suffered a softening of the brain, the muscles of his heart were impaired, his

ability to talk was largely destroyed and he was totally disabled.

The one question presented upon this record and upon which the parties are at variance is whether or not plaintiff, in sustaining the sun stroke, under the conditions and in the manner heretofore delineated, suffered an accidenal injury growing out of his employment.

The defendant, in support of its position, assigns nine reasons under the following headings:

(a) There was no breaking of a regular routine.

(b) The claimant was not rushed or hurried.

(c) He was working practically as his own boss at the time he got sick.

(d) He was not surprised by any unusual occurrence.

(e) There was no one to tell him to hurry, nor did anyone tell him to hurry in his work.

(f) He was doing some of the general maintenance work which he was used to doing and which he had been doing for three or four months.

(g) There was no emergency.

(h) He was working out-of-doors.

(i) He was not subjected to a greater hazard than that of the general public because of the heat on that day.

(c), (d), (e) and (h) appear to be supported by the record. This determination ‑ not decisive of the issue in this case. b) and (g) are issueable; (a), (f) and (i) must be resolved against the defendant upon the testimony and in our judgment are material factors.

We are cited to many Industrial Commission cases, with most of which we are familiar, several of which were in this court for review. We have considered most of these cases in **Industrial Commission v Luger, 22 Abs 20, 54 Oh Ap 148.**

We have very few heat or sun stroke cases in Ohio, though sun stroke has been held to be an accidental injury in many jurisdictions.

In **Industrial Commission v Hampton, 123 Oh St 500,** at page 506, Chief Justice Marshall writing the opinion, referred with favor to Young v Western Furniture & Mfg. Co., (Neb.) 164 NW 712, wherein heat prostration was found to be an accidental injury growing out of the employment under the circumstances appearing. There:

"The recovery was put upon the ground that the corrugated sheet iron in the building, the tarred roof, the poor ventilation, and the dust and particles of metal in the air, all acted in conjunction with the forces of nature to cause the injury."

In the second syllabus it is held:

"An injured employee is entitled to compensation where the injury is indirectly caused by an act of God, if the vis major operates upon the property and facilities of the industry, and the injury results from the fact that the hazards of the employment are made active by the forces of nature."

Two major facts stand out in the record here: (1) the unusual (for him) nature of the employment to which he was subjected; (2) the unusual conditions in addition to the extreme heat, namely, the cutting off of circulation of air, the radiation of heat from the cement walk and the reflection of heat from the buildings about where the plaintiff was working,—all hazards of the employment made active by the forces of nature.

There can be no doubt that this plaintiff was subjected to greater and different hazards on the day when he suffered the sun stroke than the general public.

Most of the cases where recovery is permitted upon the theory of accidental injury and sun stroke are grounded upon the proposition that factors growing out of the employment other than the normal forces of nature contributed materially to the injury of which complaint was made. It seems to us that these circumstances definitely appear in the instant case in such form and to such an extent as that they bring this case well within the rule which requires the determination that this plaintiff did suffer an accidental injury and that it grew out of his employment.

We are cited to the recent case of **Medley v Industrial Commission,** Franklin County, No. 2731, decided February 4, 1937, wherein this court supported a judgment against the plaintiff. There the plaintiff was carrying on the employment in which he had regularly been engaged and he was not subjected to any unusual hazard which materially contributed to his attack.

We believe that extended discussion of the cases cited and the many cases which we have read in independent research would serve no good purpose in this deci-

582

sion. The courts are divided on the subject. The cases generally are well collated in the following:

71 C. J., at pages 579, 622, 623, 624 and 625;

13 A.L.R. 979;
16 A.L.R. 1039;
25 A.L.R. 147;
40 A.L.R. 402;
46 A.L.R. 1218;
53 A.L.R. 1085;
83 A.L.R. 234.

It may safely be said that the weight of authority supports a determination that sun stroke suffered under ▮▮▮▮▮▮ ▮ facts similar to those in the instant case may be classified as an accidental injury to which the hazards of the employment materially contributed.

In the last annotation on the subject, 83 A.L.R. 234, the editor epitomizes the law as follows:

"Injuries resulting from exposure to the elements are generally classed as risks to which the general public is ▮▮▮▮▮▮ ▮ exposed. As shown by the earlier annotations, however, the rule is generally recognized that if an employee, by reason of his duties, is exposed to a special or peculiar danger from the elements,—that is, one greater than that to which other persons in the community are exposed,—and an unexpected injury is sustained by reason of the elements, the injury constitutes an accident arising out of and in the course of the workmen's compensation act."

Since this annotation there have been decided in the United States on the general subject approximately 100 cases, all of which are cited in 1936 Revision of the A. L.R. Bluebook of Supplemental Decisions, page 542.

Authorities in which the facts are almost parallel to those in the instant case are: Herbert v State (Neb.), 246 NW 454. Heat prostration suffered by a cement inspector working at a cement dock located in a slight depression, from which a sand pile and box cars shut off any breeze, held compensable.

In State Roads Commission of Maryland v Reynolds, (Md.) 165 Atl. 475, a man seventy-four years of age, ordinarily employed as a road patrolman, was transferred to other work on the road, whereby he was required to load stones on a motor truck under the direct rays of the summer sun

and on the first day of such work, while the temperature was very high for the season, became ill and died from the effects of the heat. Award affirmed.

In Skelly Oil Co. v State Industrial Commission (Okla.), 216 Pac. 933, an award was supported where it appeared that an employee suffered a sun stroke on a day that was very hot, working in a place surrounded on three sides by buildings which cut off the circulation of air. The court said that the facts supported the conclusion that the place of the employee's work, by reason of its location and nature, exposed him to the danger of sun stroke and that the risk of injury by sun stroke was naturally connected with and reasonably incident to his employment, as distinguished from the ordinary risk to which the general public was exposed from climatic conditions.

In Michigan it has been held that sun stroke is not compensable as an accidental injury in the cases of Roach v Kelsey Wheel Co., 167 NW 33, and Doyle v City of Saginaw, 243 NW 27.

In the Doyle case the court took the view that sun stroke was an occupational disease.

Judgment affirmed.

BARNES, PJ, and GEIGER, J, concur.