

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-23-00062-CV

Enrique **ORTA**, III, Individually and as Representative of the Estate of Enrique Orta, II, Ramona
E. Moreno and Sabrina Orta,
Appellants

v.

**SN OPERATING, LLC** and Patco Wireline Services, LLC,
Appellees

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2017CVF001213D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:        Beth Watkins, Justice
                Liza A. Rodriguez, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: March 6, 2024

AFFIRMED

This negligence case arises from the death of Enrique Orta, II. Appellants, Orta's survivors,

sued appellees SN Operating, LLC ("SN") and Patco Wireline Services, LLC ("Patco") alleging

SN and Patco negligently caused Orta's death. SN and Patco moved for summary judgment,

alleging there was no evidence that Orta's working conditions caused him to suffer from a fatal

heat stroke. The trial court granted summary judgment. We affirm.

BACKGROUND

After a few months of being out of work, Patco hired Orta to work on an oil drill site located in Catarina, Texas. Orta's first day of work was Friday, June 9, 2017. Orta and his co-worker, Emiliano Canales, made the two-hour drive from Kingsville, Texas, to Catarina for their 12-hour shift. Orta's job duties generally involved being outside for most of the day. Orta and Canales returned to Kingsville that night.

On his second day of work, June 10, 2017, Orta and Canales returned to Catarina for work. During the two-hour drive, Orta told Canales he had not had enough water to drink the night before, so the two stopped to buy something to eat and drink. The two reached Catarina and began working around 7:00 a.m. At approximately 1:00 p.m., Orta started to feel cramping in his hands. The cramping progressed to the point where Orta could not continue working, so he took a break for about an hour and then resumed working.

Later that day, Orta fell while walking down a flight of stairs. Two co-workers picked Orta up and assisted him to the passenger seat of his truck. While sitting in his truck with the A/C on and drinking fluids, a high-level employee of Patco walked over and talked to Orta. Orta told the high-level employee that he was fine and gestured with two thumbs up. Canales climbed in the driver seat, and the two set off around 7:00 pm for the two-hour drive back to Kingsville.

Shortly into the trip, Orta told Canales to pull over so he could vomit. Suspecting Orta may be suffering from heat exhaustion or heat stroke, Canales researched the signs an individual exhibits when they are suffering from either condition. Canales asked Orta if he wanted to go to the hospital. Orta declined, and the two continued their journey to Kingsville. During this time, Canales was on the phone with a human resources representative from Patco. The pleadings allege the representative instructed Canales to take Orta to the hospital, but Orta continued to decline. The two made it back to Orta's apartment and Canales assisted Orta inside. After about ten

minutes, Orta decided he wanted to go to the hospital. Orta, his nephew, and Canales proceeded to head to the hospital. At some point in their journey to the hospital, for reasons that are disputed in the record, the three turned around before reaching the hospital and returned to Orta's apartment.

Upon return, Orta, with the assistance of his nephew, took a shower and climbed into bed. At some point after, Orta attempted to get up from his bed, fell, hit his head on the windowsill, and went unconscious. Orta's family called 911, and EMS transported Orta to the hospital. Orta never regained consciousness and died. Orta's death certificate lists his immediate cause of death as "vomit, seizure." His death certificate additionally lists the manner of death as "natural" and "heart attack" as a signification condition contributing to death but not resulting in the underlying cause. No autopsy was performed.

Appellants sued Patco and SN[1] alleging several theories of negligence. SN filed a no-evidence motion for summary judgment arguing that appellants had no evidence to support each element of their negligence claims. The trial court denied SN's motion. SN moved for reconsideration raising one point—that appellants had no evidence supporting the causation element of their negligence claims. Specifically, SN argued appellants were required to proffer medical expert testimony to establish the link between Orta's death and heat stroke, and because appellants had failed to proffer such evidence, SN was entitled to judgment as a matter of law.

Patco also filed a no-evidence motion for summary judgment asserting it was entitled to judgment as a matter of law because appellants had no evidence that its actions caused Orta's death. Patco's motion mirrored SN's reconsideration argument—that appellants did not proffer medical expert testimony establishing the link between Orta's death and heat stroke. After a hearing, the trial court granted both motions. The trial court's order specifically limited its ruling

---

[1] Patco is an independent contractor of SN.

to finding that appellants presented no evidence to establish a genuine issue of material fact as to the proximate cause of Orta's death.

On appeal, appellants argue the trial court erred by holding they had presented no evidence that SN and Patco proximately caused Orta's death. SN and Patco argue appellants offered no evidence because medical expert testimony is necessary to support causation where the condition at issue is outside of the common knowledge and experience of laypersons.

### STANDARD OF REVIEW

"[A] movant seeking a no-evidence summary judgment need only identify 'one or more essential elements of a claim or defense . . . as to which there is no evidence,' and the burden then shifts to the nonmovant to produce 'summary judgment evidence raising a genuine issue of material fact.'" *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020) (per curiam) (quoting TEX. R. CIV. P. 166a(i)); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) (opining, to overcome a no-evidence summary judgment, "[t]he non-movants . . . must produce summary judgment evidence raising a genuine issue of material fact to defeat the summary judgment[.]"). "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ford Motor*, 135 S.W.3d at 600. "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact." *Id*. "If a nonmovant fails to carry this burden, then the court 'must' grant summary judgment." *B.C.*, 598 S.W.3d at 259 (citing TEX. R. CIV. P. 166a(i)).

"We review the trial court's summary judgment de novo." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). While conducting our de novo review, we scrutinize

the record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

## DISCUSSION

Appellants' petition asserts two causes of action against SN and Patco—negligence and gross negligence. Both negligence and gross negligence carry an element of causation. *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 784–85 (Tex. 2001). SN and Patco's no-evidence motions for summary judgment shifted the burden to appellants to present competent evidence showing SN and Patco's actions, or inactions, proximately caused Orta's death. *See* TEX. R. CIV. P. 166a(i). Proximate cause is composed of two elements—cause in fact and foreseeability—and appellants were required to present competent evidence of both elements to survive summary judgment. *See id.*; *Windrum v. Kareh*, 581 S.W.3d 761, 777 (Tex. 2019).

Appellants argue they raised a genuine issue of material fact that Orta's working conditions mandated by SN and Patco proximately caused him to suffer from a heat stroke—which ultimately led to his death. Appellants assert heat stroke is a condition within the common knowledge and experience of laypersons; therefore, they were not required to present medical expert testimony to support causation. SN and Patco disagree and argue that the symptoms and varying effects of heat stroke are outside the common knowledge and experience of laypersons. Therefore, appellants were required to present medical expert testimony establishing the link between Orta's death and heat stroke. They assert appellants' failure to present any competent evidence on this element requires the conclusion that appellants failed to raise a genuine issue of material fact on causation. Because we agree with SN and Patco on the cause-in-fact element, we need not address the foreseeability element of proximate cause.

***Applicable Law***

"The general rule has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007); *e.g. Ins. Co. of N. Am. v. Myers*, 411 S.W.2d 710, 713 (Tex. 1966) (holding that an "inference that a pre-existing tumor was activated and the deadly effects of a malignancy accelerated by an injury" was a "question of science determinable only from the testimony of expert medical professionals"); *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982) (holding that "the diagnosis of skull fractures is not within the experience of the ordinary layman" and therefore required expert testimony); *Kaster v. Woodson*, 123 S.W.2d 981, 983 (Tex. Civ. App.—Austin 1938, writ ref'd) ("What is an infection and from whence did it come are matters determinable only by medical experts.").

An exception to the general rule exists where "the causal connection between some events and conditions of a basic nature (and treatment for such conditions) are within a layperson's general experience and common sense." *Guevara*, 247 S.W.3d at 668. For example, "causation as to certain types of pain, bone fractures, and similar basic conditions following an automobile collision can be within the common experience of lay jurors." *Id.*; *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984) (holding layperson testimony was sufficient to establish chemical fumes cause plaintiff to suffer an injury). "Thus, non-expert evidence alone is sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence." *Guevara*, 247 S.W.3d at 668.

*Guevara* establishes a two-step analysis for the exception to the general rule to apply. *See id.* at 667–68; *A Guardian Angel Child Care Ctr., Inc. v. Rios*, 657 S.W.3d 44, 53 (Tex. App.—

El Paso 2022, no pet.). First, we must determine whether appellants proffered competent "evidence establishing a sequence of events which provides a strong, logically traceable connection between" Orta's working conditions, Orta suffering from a heat stroke, and his death. *Guevara*, 247 S.W.3d at 667. If appellants can show a strong, logically traceable connection, we then must determine whether the evidence showed the physical conditions Orta complained of (1) are within the common knowledge and experience of laypersons, (2) did not exist before the incident, (3) appeared after and close in time to Orta's death, and (4) are within the common knowledge and experience of laypersons, namely: the symptoms and effects caused by heat stroke. *Id.*; *Rios*, 657 S.W.3d at 53.

### *Analysis*

Appellants argue expert testimony is not necessary in the case at bar because there is a strong, logically traceable connection between Orta's working conditions, Orta suffering from a heat stroke, and his death immediately following his second day at work. Because of the temporal proximity of the condition and the event, and because the symptoms and effects of heat stroke are within the common knowledge and experience of laypersons, appellants conclude the trial court erred by finding they had produced no evidence on causation.

Assuming without deciding that appellants showed a strong, logically traceable connection between Orta's working conditions and heat stroke, appellants have not shown that the symptoms and effects of heat stroke are within the common knowledge and experience of laypersons. *See Guevara*, 247 S.W.3d at 667; *Lara v. Bui*, No. 01-21-00484-CV, 2023 WL 2249205, at *5 (Tex. App.—Houston [1st Dist.] Feb. 28, 2023, pet. denied) (mem. op.) ("[E]vidence of temporal proximity only raises a suspicion that the event caused the condition but is not legally sufficient to support a finding of causation."). It is not within the common knowledge and experience of laypersons to know the symptoms and severity of heat stroke, or why one similarly situated person

may experience a heat stroke and another may not.[2] *See Com. Standard Ins. Co. v. Allred*, 413 S.W.2d 910, 913 (Tex. 1967) (exemplifying the shared symptoms of heat stroke with other independent conditions); *see also Bernard v. Rangers Baseball, LLC*, No. 02-19-00194-CV, 2020 WL 3869626, at *3 (Tex. App.—Fort Worth July 9, 2020, no pet.) (holding "[i]t is not within the common knowledge and experience of laypersons to know what kinds of knee injuries are caused by sudden stops or jerking motions and what kind of knee conditions require physical therapy and either total knee replacement or 'cleaning' with a scope to treat."); *Sinclair v. Estate of Ramirez*, No. 10-14-00157-CV, 2015 WL 3534156, at *5 (Tex. App.—Waco June 4, 2015, no pet.) (mem. op.) (holding severe head and back injuries, caused by multiple actors, required medical expert testimony); *cf. Barraza,* 2013 WL 6255761, at *4 ("Common experience indicates that when a person who claims to have no previous injuries to a foot and shoulder is involved in a bus accident where both of the body parts collide with metal surfaces, a metal plate and pipe respectively, the source of the collision is likely the cause for the resulting injuries.").

Appellants cite *Travelers Insurance Co. v. Blazier,* for the proposition that heat stroke can be within the common knowledge and experience of laypersons. *See* 228 S.W.2d 217, 219 (Tex. App.—Fort Worth 1950, writ dism'd). In this pre-*Guevara* workers compensation appeal, the issue was whether the plaintiff was entitled to worker's compensation because he had suffered from a heat stroke at work and ultimately contracted polio. *Id.* Plaintiff testified that his weakened condition from heat stroke caused him to contract polio. *Id.* at 219–20. Plaintiff's doctor testified that plaintiff contracted polio but did not suffer a heat stroke. *Id.* In holding there was no evidence

---

[2] Although there is evidence in the record supporting appellants' contention that Orta did not have any health issues prior to his death, this evidence goes to the temporal proximity of the event rather than whether heat stroke is within the jury's purview absent medical expert testimony. *See VIA Metro. Transit Auth. v. Barraza,* No. 04-13-00035-CV, 2013 WL 6255761, at *4 (Tex. App.—San Antonio Dec. 4, 2013, pet. denied) (mem. op.).

that plaintiff contracted polio as a result of suffering from a heat stroke, the Fort Worth Court of Appeals observed:

> If there had been only the testimony [from plaintiff] in the present case, with no evidence of a diagnosis of polio, it *might be* that the trial court, though a layman, would have been justified in finding from the evidence that a heat stroke had been suffered. But where the question to be determined was whether [plaintiff] had polio or a heat stroke, or whether he had a heat stroke which in turn contributed to or brought about polio, it is our belief that the subject was one so peculiarly within the realm of scientific knowledge that the trial court was not authorized to make a diagnosis, so to speak, contrary to that made by the only medical witness.

*Id.* at 219–20 (emphasis added). Although the Fort Worth Court, through dicta, opined that heat stroke may be within the trial court's discretion to find layperson testimony sufficient under specific-uncontradicted facts, like those present in *Travelers*, we do not interpret *Travelers* to stand for the proposition that heat stroke is generally within the common knowledge and experience of laypersons. *See Guevara*, 247 S.W.3d at 667; *Com. Standard*, 413 S.W.2d at 913; *see, e.g.*, *Bernard*, 2020 WL 3869626, at *3.

Appellants further argue that Patco's workplace policies and Occupational Safety and Health Administration documents related to a worker's compensation claim filed on behalf of Orta recognize heat stroke as a serious condition; therefore, medical expert testimony is not required. This is misguided reasoning. The question before us is whether a layperson through common knowledge and experience would know if Orta was suffering from a severe heat stroke due to his symptoms and outward manifestations, not whether a Patco employee or individuals involved in the worker's compensation proceeding would recognize the same. *See Guevara*, 247 S.W.3d at 667; *Com. Standard*, 413 S.W.2d at 913; *see also Perez v. Smart Corp., Inc.*, No. 04-12-00712-CV, 2013 WL 6203358, at *3 (Tex. App.—San Antonio Nov. 27, 2013, pet. denied) (mem. op.) (noting OSHA citations and fines, or the inverse, are inadmissible evidence to establish liability

and are irrelevant to the issue of negligence). We conclude the exception to the causation medical expert-testimony requirement relied on by appellants does not apply here. Accordingly, appellants were required to present medical expert testimony to raise a genuine issue of material fact regarding causation to survive summary judgment.

In the alternative, appellants argue they have proffered sufficient medical expert testimony through their workplace safety engineer, David Zolyak. As the party offering expert testimony, appellants carry the burden to "demonstrate that the witness possesses special knowledge as to the very matter on which he proposes to give an opinion." *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718 (Tex. 1998). "[T]o constitute evidence of causation, an expert opinion must rest in reasonable medical probability." *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 500 (Tex. 1995). "This rule applies whether the opinion is expressed in testimony or in a medical record, as the need to avoid opinions based on speculation and conjecture is identical in both situations." *Id*. "Reasonable probability is determined by the substance and context of the opinion, and does not turn on semantics or on the use of a particular term or phrase." *Id.*; *see, e.g.*, *Gammill*, 972 S.W.2d at 719 ("Just as not every physician is qualified to testify as an expert in every medical malpractice case, not every mechanical engineer is qualified to testify as an expert in every products liability case.").

Here, appellants assert Zolyak is qualified to opine on the medical probability that Orta suffered a lethal heat stroke caused by his working conditions. Zolyak is a professional engineer, certified safety professional, and certified industrial hygienist. Zolyak's deposition and declaration focus on Orta's working conditions and his conclusion that such conditions may lead a worker to develop heat stroke or other heat-related illnesses. Although Zolyak may be qualified to provide an expert opinion on workplace safety, he does not have any knowledge, skill, experience, training, or education in medicine to be sufficiently qualified to render a medical opinion on the causes,

symptoms, and probable severity of heat stroke. *See Gammill*, 972 S.W.2d at 719; *Burroughs Wellcome*, 907 S.W.2d at 500; TEX. R. EVID. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."). We hold that Zolyak is not qualified to render expert testimony on the medical causation of Orta's cause of death.[3]

Finally, appellants assert SN waived any challenge to medical expert testimony because it did not present this specific argument until its motion for reconsideration. In its original no evidence motion for summary judgment and in its motion for reconsideration, SN averred appellants presented no-evidence supporting causation. *See* TEX. R. CIV. P. 166a(i) (establishing that a no-evidence motion for summary judgment "must state the elements as to which there is no evidence."). Because both motions presented a challenge to a required element of appellants' causes of action, appellants had the burden to present competent evidence raising a genuine issue of material fact. *See id.*; *B.C.*, 598 S.W.3d at 259.

Appellants' argument implies SN only had one opportunity to raise a no-evidence motion for summary judgment and that its alleged failure to raise certain arguments in its original motion prevented it from raising a new challenge to appellants' evidence, or lack thereof. A plain reading of Rule 166a(i) contains no limit on the number of times a party may move for summary judgment, and no party disputes that the trial court may have considered SN's reconsideration motion to be a proper vehicle to move for judgment as a matter of law once again. *See* TEX. R. CIV. P. 166a(i);

---

[3] We do not express an opinion on whether Zolyak was qualified to give an expert opinion on other matters in the case. Appellants also contend Orta's treating EMTs could qualify as medical experts. However, the summary judgment record does not include expert reports by the EMTs, their deposition testimony in the summary judgment record does not provide evidence of causation, and appellants did not provide substantive arguments and authority supporting this conclusion. *See* TEX. R. APP. P. 38.1(i).

*Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999) ("[W]e look to the substance of a motion to determine the relief sought, not merely to its title."). Whether viewed as a reconsideration of its previous motion or as a new independent motion for summary judgment, we hold SN did not waive its ability to challenge the evidence, or lack thereof, supporting appellants' causes of action. *See id.* We overrule appellants' issues.[4]

## CONCLUSION

The trial court did not err in granting SN and Patco's no evidence motions for summary judgment on causation. Having overruled appellants' issues, we affirm the judgment of the trial court.

Lori I. Valenzuela, Justice

---

[4] We need not reach the remainder of appellants' arguments because they were not reached by the trial court and are therefore not properly before us. *See* TEX. R. APP. P. 47.1.